[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ARTICULATION AS TO JULY 10, AND AUGUST 31, 2001 MEMORANDA OF DECISION
CT Page 15941-fp
Pools By Murphy has moved for articulation on five points regarding the memoranda of decision issued by this court on July 10, and August 31, 2001. This articulation tracks those five points as stated in the motion dated November 5, 2001, by quoting each question as stated in the motion and following with the court's response.
 1. In what way was construction of the kidney-shaped pool a "substantial deviation" from the peanut-shaped pool? (Mem. Dec. at 4, 7/10/01).
The contract between the plaintiffs, Mr. and Mrs. Strouth, and the defendant, Pools By Murphy, contained certain specifications for construction of an in-ground swimming pool and the price for the job. Among the specifications were the length, width and depth of the pool, the shape of the pool, the shape of the interior spa, the size of the interior spa, and the dates for start and finish of construction. The contract also specified that the bargain was "Contingent on financing approval." The shape of the pool and the shape of the interior spa were items expressly discussed by the Strouths with the Pools By Murphy salesman at the time of entering into the contract. These configurations were important to the Strouths. It is hard to conceive of a situation in which the size and shape of an in-ground swimming pool to be constructed in the back yard of a homeowner would not be of substantial importance to the homeowner.
There is a difference for Pools By Murphy in the cost of construction of a kidney-shaped pool and a peanut-shaped pool. In particular, a 20-foot by 40-foot kidney-shaped pool with a 6-foot marquis-shaped interior spa is less expensive to construct than a 20-foot by 40-foot peanut-shaped pool with a 6-foot circular interior spa. According to Pools By Murphy the difference in cost is several thousands of dollars. Thus, the difference in shape was important to Pools By Murphy itself, at least as to cost. Although Pools By Murphy offered to reconfigure the marquis-shaped interior spa to a circular shape after the Strouths declared the contract to be in breach, Pools By Murphy never offered to reconfigure the shape of the whole pool to the peanut-shape demanded by the Strouths. The court inferred from this fact that the cost to Pools By Murphy to reconfigure the pool was not an amount which Pools By Murphy found tolerable.
 2. On what basis did the Court decide that theCT Page 15941-fq Strouths reasonably expected the largest size peanut-shaped pool (i.e., 20' x 40'), with multiple optional items added on items, for the contract price of $27,555, when Trial Exhibit 1 showed that peanut-shaped pools ranged from $25,000 to $33,000.
The Strouths might reasonably expect that the pool for which they bargained would cost $27,555 because that was the representation made to them by the salesman at the time of entering into the contract and that was what was stated in the written contract. The court made no finding that the Strouths were knowledgeable that the largest size peanut-shaped pool available was 20' x 40'.
Several features of the pool were highlighted in the contract. Some were standard features; some were optional features. Some standard features were not included because of the use of some optional features in lieu of the standard features. Some available optional features were not part of the contract.
 3. In light of the Stipulation between Pools and Green Tree that the enforceability of the "Dealer Agreement" ("the Agreement") would be decided by reference to the four corners of the Agreement, what language within that Agreement supports the Court's finding that "Green Tree's financing of the Strouths' loan gave Pools the benefit of a customer who would not be able to purchase a pool without such financing?" (Mem. Dec. at 2, 8/31/01).
The stipulation appended several attachments in the form of exhibits. A part of Exhibit D was the written contract between the Strouths and Pools By Murphy. That contract specified that the deal was contingent on financing approval. In addition, there was ample testimony that the Strouths were not able to pay for an in-ground swimming pool without the provision of such financing.
At the outset of the trial, Green Tree Financial Services was excused from presenting evidence at the trial by their own choice on the basis that the stipulation of facts would be acceptable to the court. The court did not order or agree that only the facts recited in the stipulation might be considered by the court to the exclusion of the facts found by the court in the underlying trial. Indeed, the factual findings of the court based on the evidence presented at the trial were an essential CT Page 15941-fr basis for the further action relating to the cross claim. To the extent that the stipulation and the evidence adduced at the trial might not be consistent, the court and the parties would be bound by the version in the stipulation. On the foregoing basis and with the foregoing understanding, Green Tree Financial Services opted not to introduce any partisan evidence on its own behalf during the trial nor even to have representation present at the trial. Pools By Murphy, on the other hand, was not precluded from introducing evidence during the trial regarding the financing arrangements with the Strouths. Pools By Murphy did introduce such evidence during the trial. Evidence adduced at the trial and findings made by the court on the basis of that evidence could properly be considered in the decision on the cross claim.
 4. Please rule on Pools' claim at pages 5-6 of its Post-Judgment Memorandum of Law in Opposition to Green Tree's Cross-Claim, that the Agreement was unenforceable because neither party was obligated to perform.
The stipulation presented to the court by the parties stated at Paragraph 5, in relation to the Green Tree Financial Services provision of financing to the Strouths, that: "5. Defendant Pools arranged for said financing through Green Tree. The financing was provided by Green Tree pursuant to the terms of the Dealer Agreement" The court believes that the Memorandum of Decision of August 31, 2001, addressed the issue of the parties' obligations to perform once the dependant conditions were met
 5. How did the Agreement affirmatively obligate Pools and Green Tree to perform, given the language in the Agreement that Pools "desired" to sell notes to Green Tree, and the absence of any language obligating Green Tree to perform any tasks?
The stipulation presented to the court by the parties stated at Paragraph 5, in relation to the Green Tree Financial Services provision of financing to the Strouths, that "5. Defendant Pools arranged for said financing through Green Tree. The financing was provided by Green Tree pursuant to the terms of the Dealer Agreement" The court believes that the Memorandum of Decision of August 31, 2001, addressed the issue of the parties' obligations to perform once the dependant conditions were met.
Winslow, J.